IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Cynthia L. Merlini,<br><br>              Plaintiff,<br><br>              v.<br><br>Canada,<br><br>              Defendants. | Case No. 1:17-cv-10519-NMG<br><br>The Honorable Nathaniel M. Gorton |

**DEFENDANT CANADA'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

**INTRODUCTION**

Plaintiff's complaint starts and ends with the Government of Canada's sovereign decision on how to provide workers' compensation to its thousands of employees in foreign missions in the United States and across the world. After more than eight years of litigation, during which her claims were rejected by the Massachusetts Department of Industrial Accidents ("DIA") and a Massachusetts Appeals Court, Plaintiff seeks to twist her previously-adjudicated benefits claim into a new action under a Massachusetts' workers' compensation law that requires nonpublic self-insured employers to register with the state. This fourth bite at the apple, however framed, cannot escape the fact that the Court lacks subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq*.

Plaintiff has tried for nearly a decade to gain additional workers' compensation benefits for an injury she allegedly suffered in 2009 while working at the Boston Consulate. After allegedly suffering the injury, Plaintiff received benefits from the Government of Canada in the

1

form of her full salary for approximately seven months until she was directed to return to work. *In re Merlini*, 89 Mass. App. Ct. 1130, 54 N.E.3d 606, at *1. At that time, Plaintiff was advised of her right to appeal the discontinuation of benefits to the Workers' Compensation Appeals Board in Canada, but Plaintiff elected not to avail herself of that right. *Id*. Instead, Plaintiff filed a claim against the Massachusetts Workers' Compensation Trust Fund seeking additional benefits beyond what she had already received. *Id*. The DIA Reviewing Board ("Reviewing Board") held she was not entitled to such benefits. *Id.* On appeal, the Massachusetts Appeals Court upheld the Reviewing Board's decision. *Id.*

Now, having been denied relief by the DIA and Massachusetts Appeals Court, Plaintiff has filed suit in yet another forum arguing that the Government of Canada should be held strictly liable as an "uninsured employer" under Massachusetts' workers' compensation law. *See* Compl. Count I, ¶¶ 26-32. The Government of Canada, however, is "presumptively immune from the jurisdiction of United States courts" under the FSIA. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Regardless of how Plaintiff frames her complaint, this case continues to rest on the Government of Canada's workers' compensation policies for its thousands of employees around the world. Federal and state courts and administrative bodies have recognized that these types of issues are "quintessential" governmental functions that qualify for immunity under the FSIA. Plaintiff's attempts to fit her complaint into the narrow "commercial activity" and "non-commercial tort" exceptions to the general presumption of immunity are unavailing.

Moreover, the complaint is also subject to dismissal because an essential element of her claim was already decided against her. In order for Plaintiff to succeed on her claim under Section 66 of the Massachusetts' Workers' Compensation Act she must plausibly allege that Canada was a nonpublic employer that was required to obtain local workers' compensation

insurance or register with the state as a self-insurer. However, this issue was already decided by the Reviewing Board, which held that Canada was not required to obtain local workers' compensation insurance or register with the state as a self-insurer and therefore could not be considered an uninsured employer under the statute. This holding is entitled to preclusive effect. Plaintiff therefore cannot as a matter of law state a claim under the Massachusetts' Workers' Compensation Act and the Court is divested of subject matter jurisdiction.

Accordingly, the Government of Canada respectfully requests that the complaint be dismissed with prejudice under Rule 12(b)(1) for lack of subject matter jurisdiction, or in the alternative, under Rule 12(b)(6) for failure to state a claim.

## **BACKGROUND**

The Canadian Consulate in Boston is an extension of the Canadian Government; it has no distinct juridical personality. It is one of sixteen Canadian missions in the United States, including the Embassy in Washington, and one of several hundred spread across the globe. The Consulate's purpose is to monitor and interpret local U.S. political and economic events and trends for the Canadian Government and represent Canadian interests on issues such as borders, security, energy, forestry, and trade. In addition, the Consulate serves as a resource for the Canadian Government by working with U.S. government officials and non-governmental organizations on other issues of bilateral interest. The Consulate also provides consular services to Canadian citizens in New England, including services related to citizenship, pensions, notarization, elections, taxation, and travel advisories. Finally, the Consulate promotes general trade, investment, and market access between Canada and New England.[1]

---

[1] All of these roles are consistent with the Vienna Convention on Consular Relations, which defines consular functions as including "furthering the development of commercial, economic, cultural and scientific relations," between two states; "issuing passports and travel documents to nationals of the sending State," and "helping and assisting nationals, both individuals and bodies

3

The Consulate hires locally-engaged staff, including U.S., Canadian, and citizens of other countries, to assist the Consulate in carrying out its diplomatic functions (known as locally-engaged staff or "LES"). The Canadian Government provides workers' compensation benefits for LES through its own government employee compensation system. LES are a distinct category of Canadian Government employee appointed pursuant to the Locally-Engaged Staff Employment Regulations, SOR/1995-152, a Regulation under the Public Service Employment Act, S.C. 2003, c. 22. The Government Employees Compensation Act, R.S.C. 1985, c. G-5, establishes a framework for mandatory compensation for employees of the Federal Government of Canada who are injured in the course of their employment. The Act applies to LES employed outside of Canada, and allows appeals to be taken to the Canadian Workers' Compensation Appeals Board. *In re Merlini*, 89 Mass. App. Ct. 1130, 54 N.E.3d 606 (2016).

Starting in 2003, Plaintiff was employed by the Consulate as "Assistant to the Consul General." Compl. ¶ 6, ECF No. 1. As the complaint acknowledges, "the Consulate instructed all its American employees, including [Plaintiff], to apply to the Canadian government for benefits in the event of a workplace accident." Compl. ¶ 1. Plaintiff alleges she was injured on the job on January 22, 2009, when she tripped over an unsecured speakerphone cord and fell into a credenza. Compl. ¶¶ 13-14. Plaintiff alleges she suffered a serious bodily injury that has left her unable to work. Compl. ¶ 17. Following this alleged injury, Plaintiff received benefits in the form of her full salary "from the Government of Canada under Canadian law from shortly after the accident until October 2009." Compl. ¶ 23.

The Government of Canada ceased paying benefits in October 2009 after determining that Plaintiff was able to return to work. Compl. ¶ 23; *In re Merlini*, 89 Mass. App. Ct. 1130, 54 N.E.3d 606, at *1. Plaintiff did not appeal this decision to the Canadian Workers' Compensation

---

corporate, of the sending State." Vienna Convention, Art. 5.

Appeals Board, as the Consulate instructed her was her right. *Id.* Plaintiff also "admitted that after the denial of her request for reconsideration and reinstatement of benefits, she did not file an appeal." *Merlini v. Consulate General of Canada*, No. 035748-09, 2015 WL 1781184, at *5 (Mass. Dept. Ind. Acc. Apr. 9, 2015).

Instead, Plaintiff brought a claim against the Massachusetts Workers' Compensation Trust Fund seeking total incapacity benefits. *Id.* An administrative judge in the DIA found Plaintiff entitled to benefits under Massachusetts workers' compensation law. *Id.* On appeal, the Reviewing Board reversed, holding that Plaintiff could not recover from the Workers' Compensation Trust because (1) state courts lacked jurisdiction over Canada, the employer, (2) Canada was not an "uninsured employer" as defined by Massachusetts law because as a foreign state it could not be required to comply with Massachusetts insurance licensing requirements, and (3) Plaintiff was entitled to benefits in another jurisdiction (*i.e.,* Canada). *Id.* Plaintiff appealed the decision to the Massachusetts Appeals Court, which affirmed the Reviewing Board's decision on grounds that Plaintiff was entitled to benefits in Canada. *Id.* at *2. Plaintiff did not petition the Massachusetts Supreme Judicial Court for further appellate review.

## ARGUMENT

Now, after neglecting to appeal to the Canadian Workers' Compensation Appeals Board, after being denied any benefits by the DIA, and after that denial was upheld in Massachusetts state court, Plaintiff attempts another shot before yet another tribunal: asking this Court to find Canada strictly liable as an "uninsured employer" under a Massachusetts' workers' compensation law that requires nonpublic self-insured employers to register with the state. *See* Compl. Count I, ¶¶ 26-32. However, Plaintiff's claims continue to be barred by the FSIA as they are based on the Government of Canada's sovereign policy decision to provide workers' compensation to its employees in diplomatic missions in the United States and across the world

5

through its own program.

The FSIA provides the exclusive basis for acquiring subject matter jurisdiction over foreign states and their agencies and instrumentalities. *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 393 (2015); *Fagot Rodriguez v. Republic of Costa Rica*, 297 F.3d 1, 3 (1st Cir. 2002). Under the FSIA, a foreign state (along with its agencies and instrumentalities) is presumed immune from the jurisdiction of U.S. courts—and therefore suits against them are subject to dismissal with prejudice under Federal Rule 12(b)(1)—unless a specific FSIA exception applies. *OBB Personenverkehr AG*, 136 S. Ct. at 394.

Acknowledging that Canada would typically be immune from suit under the FSIA, plaintiff attempts to circumvent this barrier by alleging that Canada should be held liable for purported violations of the Massachusetts statute under the "commercial activity exception to foreign sovereign immunity," Compl. ¶ 3, or in the alternative "under the non-commercial tort exception" to the FSIA, ¶ 4. Neither of Plaintiff's proffered exceptions to the FSIA applies, and Plaintiff's complaint should be dismissed with prejudice.

I. **The Foreign Sovereign Immunities Act Divests This Court of Subject Matter Jurisdiction and Requires Dismissal.**

   A. **Plaintiff's Claims Are Based Upon Canada's Decision How to Best Provide Workers' Compensation to Diplomatic Employees.**

There is no doubt that Canada, a foreign state, is presumed immune from suit and entitled to dismissal in this matter absent the express application of one of the FSIA's narrow exceptions. Plaintiff offers two: (1) the commercial activity exception, and (2) the tortious activity exception. As is this case here, both exceptions are inapplicable where the plaintiff's claims are "based upon" an inherently sovereign decision to provide workers' compensation to its employees under Canadian law.

To determine whether it may exercise jurisdiction over a foreign state pursuant to the

commercial activity or the tortious activity exceptions to the FSIA, a court first must identify the particular conduct of the foreign state that the plaintiff's action is "based upon" for purposes of the FSIA. *Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993); *see* 28 U.S.C § 1605(a)(2) (allowing for suit where "action is based upon a commercial activity"); *id.* § 1605(a)(5)(A) (tort exception does not apply to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function"). The term "based upon" is construed to "denot[e] conduct that forms the 'basis,' or 'foundation,' for a claim," and "is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Saudi Arabia*, 507 U.S. at 357; *Fagot Rodriguez*, 297 F.3d at 6.

Plaintiff brought her one-count complaint under the section of the Massachusetts workers' compensation law that provides a private right of action and access to the courts (as opposed to the administrative forum) *only* where a plaintiff's nonpublic employer did not obtain local workers' compensation insurance or get licensed as a Massachusetts self-insurer. *Doe v. Access Indus., Inc.*, 137 F. Supp. 3d 14, 15 (D. Mass. 2015) (citing M.G.L. c. 152, §§ 66, 67). The basis, foundation, and elements of Plaintiff's theory of the case center on Canada's decision to provide workers' compensation insurance for its diplomatic employees and LES through its own government, rather than obtaining local coverage or getting a license for each locality in which it maintains diplomatic missions.[2] The statute imposes strict liability on an uninsured employer and allows a plaintiff to recover for on-the-job injuries regardless of whether the employer acted negligently. *Id.* The complaint alleges that Canada "was uninsured under the worker's compensation law of Massachusetts," Compl. ¶ 28, and therefore "is strictly liability for [Plaintiff's] damages, without regard to fault," Compl. ¶ 32. Plaintiff's claim is therefore plainly

---

[2] Plaintiff admits she understood that she was subject to the Canadian workers' compensation plan as part of the terms of her employment. Compl. ¶ 1.

"based upon" Canada's policies for the provision of workers' compensation insurance for its foreign missions.

Thus, according to Plaintiff's theory of the case, her claim rises and falls depending on whether Canada was an uninsured employer under Massachusetts law. As explained below, how Canada chooses to provide workers' compensation for its employees in missions around the world is a sovereign decision protected by the FSIA.

**B.     Canada's Determination of How To Provide Workers' Compensation Benefits Is Not a Commercial Activity as Defined by the Statute.**

Under Section 1605(a)(2) of the FSIA, a foreign state is not immune from jurisdiction where "the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). "Commercial activity" involves "either a regular course of commercial conduct or a particular commercial transaction or act [and t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). The Supreme Court has explained that a foreign sovereign "engages in commercial activity . . . where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns." *Nelson*, 507 U.S. at 360 (internal quotation marks and citation omitted). The commercial activity exception applies only where the sovereign acts "in the market in the manner of a private player." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611 (1992).

Courts have generally held that "[t]he concept of commercial activity should be defined narrowly . . . [and that] courts should be cautious when addressing areas that affect affairs of foreign governments." *Liberian Eastern Timber*, 659 F. Supp. at 610 (citation and internal quotation marks omitted); *see also* 14A Charles Alan Wright & Arthur R. Miller, Federal
8

Practice and Procedure § 3662 (3rd ed. 2012) ("[FSIA's] concept of 'commercial activity' as an exception to the rule of sovereign immunity should be defined narrowly so as to keep American courts away from those areas of government activity that touch very closely on the sensitive involvements and policies of foreign countries.").

Applying these principles in the employment context, the commercial activity exception does not apply when the foreign sovereign is subject to a suit by virtue of its role as a plaintiff's employer and the claims are based on governmental functions. *See Kato v. Ishihara*, 360 F.3d 106, 112 (2d Cir. 2004) (commercial activity exception does not depend on an analysis of the plaintiff's job functions, but rather whether the "particular actions that the foreign state perform[ed] . . . [was] a basic—even quintessential—government function"); *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 465 (4th Cir. 2000) (holding an employment decision on security for the Saudi Royal family was a sovereign act); *Gates v. Victor Fine Foods*, 54 F.3d 1457, 1465-66 (9th Cir. 1995) (dismissing employment claim because the employment claims were unrelated to the entity's commercial activities); *Crum v. Kingdom of Saudi Arabia,* No. 05-275, 2005 U.S. Dist. Lexis 38483, at *2 (E.D. Va. 2005) (dismissing an employment claim based on national origin because the "hiring [of] an individual to drive a limousine does not constitute a 'commercial activity' within the meaning of the [FSIA]."); *see also Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 177 n.5 (2d Cir. 2010) (citations omitted) ("[W]e properly focus our 'commercial activity' analysis on 'the particular actions that the foreign state performs,' and not on the particular actions of any specific . . . employee," because to do otherwise would allow the exception "to swallow the rule of presumptive sovereign immunity codified in the FSIA.")

Here, Plaintiff's claims demonstrate that her complaint is based upon governmental

functions peculiar to sovereigns. Plaintiff claims that Canada "has not complied with the Massachusetts workers' compensation statute . . . . because it believed, wrongly, that its status as a foreign consulate provided it with immunity." Compl. ¶ 1. The complaint acknowledges that Plaintiff could apply to the Canadian Government for benefits, Compl. ¶ 1, and that she in fact did receive benefits from the Canadian Government, Compl. ¶ 23. Moreover, as the Massachusetts Appeals Court recognized in denying Plaintiff's appeal, Canadian law provided Plaintiff with a right of appeal in Canada's administrative forum. *In re Merlini*, 89 Mass. App. Ct. 1130, 54 N.E.3d 606, at *1.

Plaintiff ignores that the Government of Canada's decision to provide benefits to Plaintiff (and similarly-situated LES) by way of Canadian workers' compensation law and Canada's administrative procedure—as opposed to the laws of each diplomatic location—is a governmental function peculiar to sovereigns, and could not in fact be performed by "private citizens." *Cf. Butters*, 225 F.3d at 465 ("The relevant act here—a foreign sovereign's decision as to how best to secure the safety of its leaders—is quintessentially an act 'peculiar to sovereigns.'").

That Canada's decisions with respect to providing employee benefits across more than one hundred countries is inherently governmental in nature and unique to sovereign entities also makes policy sense. Finding that foreign governments are immune from state workers' compensation requirements (and other similar laws) is entirely consistent with the FSIA's goal of accommodating "the interests of foreign states in avoiding the embarrassment of defending the propriety of political acts before a foreign court." *Id.* (citation omitted). The determination of foreign mission benefits and staffing are inherently governmental matters that clearly vary from sovereign to sovereign based on the home-country laws, culture, and history.

Plaintiff would turn the FSIA on its head by having every court in the United States enter the realm of international law and arbitrate whether a sovereign nation's management of its consulate complies with local, federal, and international law. The FSIA, however, "presupposes a tolerance for the sovereign decisions of other countries that may reflect legal norms and cultural values quite different from our own." *Butters*, 225 F.2d at 467. Otherwise, a foreign government may have to defend or explain its local laws and customs to regulators across 50 states (and countless local authorities), which is the type of burden that the FSIA was intended to preempt.

Thus, the face of the statute and the policy behind it demonstrate that there is nothing "commercial" about Canada's decision to provide workers' compensation coverage to its LES through the laws of Canada. This was a sovereign decision entitled to immunity under the FSIA.

**C.      Canada's Determination of How To Provide Workers' Compensation Benefits is a Discretionary Decision That Is Expressly Excluded From the Tortious Activity Exception.**

Plaintiff also seeks to avail herself of the FSIA's "tortious activity exception," which removes sovereign immunity for actions in which "money damages are sought against a foreign state for personal injury . . . occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5). The tortious activity exemption "extends only to non-discretionary torts; it does not apply to 'any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused.'" *Fagot Rodriguez*, 297 F.3d at 8 (citing § 1605(a)(5)(A)).

Here, it is clear the Canadian Government's decision to provide Plaintiff with benefits under Canadian law, and not to obtain local insurance, is a "government action and decision

based on considerations of public policy." *See id.* In determining whether a claim is based upon the exercise or performance or the failure to exercise or perform a discretionary function, a court must determine whether the challenged conduct "involves an element of judgment . . . that the discretionary function exception was designed to shield." *Id.* at 9. "The purpose of the exception is to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *Id.* (citations and internal quotation marks omitted).

Thus, Canada's "governmental actions and decisions based on considerations of public policy" are protected. *Id.* As the U.S. Court of Appeals for the First Circuit put it, "the critical question here is whether the acts or omissions that form the basis of the suit are susceptible to a policy-driven analysis or, put differently, whether some plausible policy justification could have undergirded the challenged conduct." *Id.* at 11. As was recognized by the DIA and Massachusetts Appeals Court, Plaintiff was entitled to, and did in fact, receive benefits under Canadian law. *See, e.g.*, *In re Merlini*, 89 Mass. App. Ct. 1130, 54 N.E.3d 606, at *1 ("[T]he question at the heart of this appeal is whether the employee is entitled to benefits under Canadian law."). Pursuant to that law, Canada made a judgment that it made social, economic, and political sense for Canada to provide its own workers' compensation benefits for employees of the Consulate, and there can be no question that this determination was undergirded by "some plausible policy justification." *See id* at 9, 11.

To allow a suit to be maintained under the tort exception in these circumstances would undermine the discretionary exception's central purpose: to prevent judicial second guessing of policy decisions through the medium of an action in tort. *See id.* at 9. Moreover, permitting this type of suit to proceed would impermissibly broaden what is intended as a narrow exemption to

12

sovereign immunity by allowing plaintiffs to claim "tort" under any federal or state statute that creates a right of action against employers that do not follow state or federal-mandated policy.

Moreover, even if Canada's decision regarding the provision of workers' compensation benefits was considered "non-discretionary," it is not a "tort," and therefore does not fit into the tortious activity exception. *See* Compl. Count I, ¶¶ 26-32 (asserting only cause of action under M.G.L. c. 152, § 66, which imposes liability solely based on provision of workers' compensation benefits without regard to negligence or fault).

Accordingly, Plaintiff's conclusory allegation that the tortious activity exception applies is insufficient to establish jurisdiction over Canada under the FSIA.

### D. There are Important Foreign Policy Reasons for Construing FSIA Exemptions Narrowly.

This proceeding involves the types of complex, international legal issues that have prompted the courts to construe the FSIA narrowly. *Liberian Eastern Timber Corp. v. Gov't of the Republic of Liberia*, 659 F. Supp. 606, 610 (D.D.C. 1987) (advising courts to "be cautious when addressing areas that affect affairs of foreign governments."). The Government of Canada respectfully suggests that "requir[ing] the [Government of Canada] to justify . . . the arrangements it believes are best suited to" the staffing and operation of its foreign missions would violate international law and the requirements of reciprocity and comity. *Butters*, 225 F.3d at 465; *see also Hilton v. Guyot*, 159 U.S. 113, 228 (1895) ("[I]nternational law is founded upon mutuality and reciprocity.") Subjecting a foreign government to local agency jurisdiction could have serious ramifications for the U.S. government. As the D.C. Circuit recognized in *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 841 (D.C. Cir. 1984), because "some foreign states base their sovereign immunity decisions on reciprocity," a U.S. court or agency decision to exercise jurisdiction over a foreign state can "subject the United States to suits

abroad" in like circumstances. To the extent that U.S. courts and state authorities take a narrow view of foreign sovereign immunity, such "[j]udicial interference with [foreign governments' policies] would have serious foreign policy ramifications for the United States." *Butters*, 225 F.3d at 465. The FSIA, however, aims to further reciprocity among nations by affording foreign sovereigns immunity for their governmental activities. Applying these principles to this case, Canada must be afforded sovereign immunity for the challenged governmental conduct.

II. **The DIA Reviewing Board's Holding That Canada Is Not Uninsured in Violation of Massachusetts' Workers' Compensation Law is Entitled to Preclusive Effect and Therefore the Complaint Must Be Dismissed.**

In order to state a claim under Section 66 of the Massachusetts' Workers' Compensation Act, a plaintiff must allege that at the time of injury the defendant employer was an "uninsured employer" in violation of the Act. *In re Merlini*, 89 Mass. App. Ct. 1130, 54 N.E.3d 606; *Coppola v. City of Beverly*, 31 Mass. App. Ct. 209, 210, 576 N.E.2d 686, 687 (1991). The presence of an "uninsured employer" in violation of the Act is not only an essential element of a claim under the Act, it is the only means of establishing subject matter jurisdiction. *See Lee v. Int'l Data Grp.*, 55 Mass. App. Ct. 110, 115, 769 N.E.2d 761, 765 (2002) (where plaintiff cannot show that employer was "uninsured" in violation of the Massachusetts' Workers' Compensation Act, DIA had exclusive jurisdiction and Section 66 cause of action was dismissed for lack of subject matter jurisdiction). Here, Plaintiff cannot allege that Canada was an uninsured employer in violation of the Act because the Reviewing Board held expressly to the contrary. *See Merlini*, 2015 WL 1781184, at *3 ("Canada is not uninsured in violation of [the Workers' Compensation Act]."). That holding is entitled to preclusive effect and cannot be relitigated in federal court. Accordingly, this Court lacks subject matter jurisdiction and the complaint fails to state a claim upon which relief can be granted.

Federal courts afford the decisions of a state administrative agency acting in a judicial

14

capacity the same preclusive effect to which the agency would be entitled in the state's courts. *Kosereis v. Rhode Island*, 331 F.3d 207, 212 (1st Cir. 2003) (citing *Univ. of Tenn. v. Elliott,* 478 U.S. 788, 799 (1986)). For issue preclusion to apply under Massachusetts law, the following requirements apply: (1) there must have been a final judgment on the merits in the prior adjudication, (2) the party against whom preclusion is asserted must have been a party to the prior adjudication, (3) the issue decided must be the same, and (4) the issue decided in the prior adjudication must have been essential to the earlier judgment. *Kobrin v. Bd. of Registration in Med.,* 444 Mass. 837, 843-44, 832 N.E.2d 628, 634 (2005).

As the Supreme Court has explained, the courts "have long favored application of the common-law doctrines of collateral estoppel . . . to those determinations of administrative bodies that have attained finality." *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107 (1991). "This is true even when the issue has been decided by an administrative agency, be it state or federal, which acts in a judicial capacity." *Global NAPs, Inc. v. Mass. Dep't of Telecomm. & Energy,* 427 F.3d 34, 44 n.8 (1st Cir. 2005) (internal quotation marks and citations omitted). Moreover, so long as the elements of issue preclusion are met, it does not matter that a plaintiff's cause of action is different in the later action, or that it is asserted by a party not present in the administrative forum. *See P I Enterprises, Inc. v. Cataldo*, 457 F.2d 1012, 1015 (1st Cir. 1972) (citing *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326 (1955) ("Obviously the federal cause of action is different from that brought in state court, but the doctrine of collateral estoppel 'precludes relitigation of issues actually litigated and determined in the prior suit, *regardless of whether [the judgment] was based on the same cause of action as the second suit.*'") (emphasis in original); *Seetharaman v. Stone & Webster, Inc.*, No. 05-cv-11105, 2009 WL 1364706, at *3 (D. Mass. May 11, 2009) ("Issue preclusion may be asserted by

15

parties who were not present in the initial action.").

Here, the Reviewing Board's determination that Canada is not an "uninsured employer" as defined by the Massachusetts' Workers' Compensation Act easily satisfies the four elements of issue preclusion, barring this Court from determining otherwise.

First, the Reviewing Board's decision clearly constitutes a "final judgment on the merits in the prior adjudication," as the Board's judgment against Plaintiff was affirmed by the Appeals Court of Massachusetts, and her appeal rights expired. *See Stowe v. Bologna*, 32 Mass. App. Ct. 612, 615, 592 N.E.2d 764, 766 (1992), *aff'd*, 415 Mass. 20, 610 N.E.2d 961 (1993) ("A final order of an administrative agency in an adjudicatory proceeding, not appealed from and as to which the appeal period has expired, precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction.").

Second, Plaintiff was a party to the Reviewing Board adjudication. In describing the same course of events as is the case here, one Massachusetts court explained "there is no doubt that, if the DIA administratively had denied [the employee's] claim for workers' compensation benefits from the Trust Fund . . . [he] would be precluded from relitigating these issues in court in his claim against [the employer]." *Pena v. Geszpenc*, No. 00-cv-3172, 2002 WL 1275815, at *4 (Mass. Super. June 11, 2002). "To be blunt, if he had lost at the DIA, he would automatically also have lost in his § 66 action in court." *Id.* Similarly, issue preclusion against Plaintiff in this action is proper.

Third, the issue being decided is the same. The issue addressed by the Reviewing Board was whether Canada is a nonpublic employer that is required to carry Massachusetts workers' compensation coverage (or register as a self-insurer) under the Massachusetts' Workers' Compensation Act. *See Merlini*, 2015 WL 1781184, at *3. The Reviewing Board determined

16

Canada was not such an employer. Here, the same issue is an essential element of Plaintiff's claim, which cannot survive if Canada was not required to carry Massachusetts workers' compensation coverage or register as a self-insurer. *See* Compl. ¶ 1 ("The Consulate had not complied with the Massachusetts workers' compensation statute by purchasing workers' compensation insurance or by obtaining a license as a self-insurer."); Compl. ¶ 28 ("Canada[] was uninsured under the worker's compensation law of Massachusetts."); *cf. Coppola*, 31 Mass. App. Ct. at 212-13 576 N.E.2d at 688 (public employer that is not required to carry Massachusetts workers' compensation coverage or register as a self-insurer under the Massachusetts' Workers' Compensation Act cannot as a matter of law be held liable under Section 66's strict liability provisions).

Fourth, the Reviewing Board's determination that Canada is a public employer that is not required to comply with the mandatory provisions of the Massachusetts' Workers' Compensation Act was essential to the Reviewing Board's judgment. The Reviewing Board enumerated three bases for reversing the administrative judge's determination that Plaintiff was entitled to benefits. *Merlini*, 2015 WL 1781184. One basis was that the judge's finding that "Canada is not a public employer and is thus required to carry workers' compensation coverage" was "contrary to law." *Id.* at *3. The Reviewing Board reasoned that because the public employer exception to the Massachusetts' Workers' Compensation Act was based on principles of governmental immunity, there is no reason that a foreign sovereign should not fall into the category of employers that are public, and therefore not required to carry local workers' compensation coverage. *Id.* The Reviewing Board held that Plaintiff was not entitled to relief from the Massachusetts Workers' Compensation Trust Fund "on this ground alone." *Id.* at *4. Because this was independently sufficient to support the Reviewing Board's finding, it is

17

considered "essential" for purposes of determining preclusive effect. *See Alicea v. Commonwealth*, 466 Mass. 228, 238, 993 N.E.2d 725, 733 n.15 (2013) (citing *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 251-255 (3d Cir. 2006) ("[E]ven if the decision could be viewed as resting on two independent findings, the majority of Federal courts would give preclusive effect to each finding that has actually been litigated and decided.").

Accordingly, the Reviewing Board's finding that Canada was not an "uninsured employer" as defined by the Massachusetts' Workers' Compensation Act is entitled to preclusive effect. As Plaintiff cannot allege essential elements of her claim due to issue preclusion, it must be dismissed for failure to state a claim. *See, e.g.*, *Buba v. Deutsche Bank Nat'l Trust Co. Americas*, No. 16-cv-10421, 2016 WL 2626861 (D. Mass. May 6, 2016) (dismissing complaint under Rule 12(b)(6) "on the ground that the issues are precluded by an earlier adverse ruling in state court").

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's complaint with prejudice.

Respectfully submitted,

Dated: June 19, 2017      */s/ D.E. Wilson, Jr.*
D.E. Wilson, Jr. (*pro hac vice forthcoming*)
Andrew E. Bigart (*pro hac vice forthcoming*)
Benjamin Horowitz (*pro hac vice forthcoming*)
VENABLE LLP
600 Massachusetts Avenue
Washington, D.C. 20001
Telephone: (202) 344-4819
Facsimile: (202) 344-8300
dewilson@venable.com
aebigart@venable.com
behorowitz@venable.com


/s/ Chrisann Leal
Paul M. Moretti, BBO #552488
Chrisann Leal, BBO 566402
Michael C. Houlihan, BBO #690573
CURTIN, MURPHY & O'REILLY, P.C.
Park Square Building, 3rd Floor
Boston, Massachusetts 02116
Telephone: (617) 574-1700
Facsimile: (617) 574-1710
pmoretti@cmopc.com
cleal@cmopc.com
mhoulihan@cmopc.com

**Certificate of Service**

I, Chrisann Leal, hereby certify that true copy of the above document was served upon the attorney of record for the Plaintiff electronically on June 19, 2017.

/s/ Chrisann Leal