CYNTHIA L. MERLINI,

Plaintiff,

vs.

CANADA,

Defendant

Civ. A. No. 1:17-cv-10519-NMG

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### PRELIMINARY STATEMENT

Cynthia Merlini was a Massachusetts worker hurt on the job. Her employer had not purchased workers' compensation insurance. The Department of Industrial Accidents found that she was permanently disabled from work. She is suing the employer under G.L. c. 152, § 66, the statute that allows suits for workplace injuries when the employer is uninsured in violation of the workers' compensation law.

Merlini's claim should be simple, but it has unusual complexities because her employer, the Consulate General of Canada, is a foreign sovereign. And the path her claim has taken through the Canadian workers' compensation system, the Department of Industrial Accidents, and the Massachusetts Appeals Court was longer and more complicated than perhaps it would have been had Canada done what the law required and informed Merlini of her rights under Massachusetts law at the outset rather than acting as an unlicensed self-insurer and telling her, contrary to law, to submit her claims to Canadian authorities. To the extent Canada seeks to make an issue about the length of the case and the number of proceedings involved, the answer is that the incorrect assertion of immunity to shield the DIA and Canada from their obligations has

left Merlini unable to work, impoverished, and in need of the compensation to which injured Massachusetts workers are entitled.

Canada argues that the case must be dismissed for two reasons. First, Canada claims that the Reviewing Board has already held that Canada was not uninsured in violation of the statute, and that the Board's decision has issue-preclusive effect. Canada prefers to argue that the Reviewing Board's decision is preclusive rather than giving a substantive defense of the decision because as we show, the decision is indefensible. But its preclusion argument is wrong: the Reviewing Board's decision on that issue was not necessary to the outcome of the case.

Second, Canada claims that it is immune from suit under the Foreign Sovereign Immunities Act, because the case is based upon the Canadian government's sovereign decision to flout the Massachusetts workers' compensation law. We show below that this argument is wrong, too. The case comes within the commercial activity exception to FSIA immunity, because it is based on Canada's employment of Merlini in Massachusetts.[1] We also show that the premise of Canada's position is wrong: foreign governments have no more right to decide whether to comply with Massachusetts law when they do business here than do other employers.

The motion to dismiss must be denied.

<u>FACTS</u>

The Court should treat the well-pleaded facts alleged in the complaint as true and draw all reasonable inferences in Merlini's favor. *See Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts,* 727 F.3d 10, 12 (1st Cir. 2013).

---

[1] We also show, in the alternative, that the case comes within the non-commercial tort exception to FSIA immunity.

Merlini is an American citizen who resides in Massachusetts. (Compl. ¶ 8). The Consulate hired her in 2003 as an assistant to the Consul General. (Id. ¶ 7). Her place of work was at the Consulate's office in Massachusetts. (Id.).

Merlini's duties were purely clerical and comparable to the duties of the secretary to an executive at any private firm. (Id. ¶ 9). She answered the telephone, kept files, typed letters, and did similar tasks. (Id.). Indeed, at the time of her accident, she was setting up coffee and tea for a meeting the Consul General was to attend. (Id. ¶ 10). Merlini was not a consular officer, and she performed no governmental, consular, diplomatic, or other official tasks. (Id. ¶ 11). She took no competitive examination before being hired. (Id. ¶ 12). She was not entitled to tenure protections. (Id.). She did not receive the same benefits as a foreign service officer. (Id.).

In 2009, Merlini was injured on the job at the Consulate in Boston. (Id. ¶ 13). The immediate cause of the injury was a cord that a consular employee had negligently left unsecured. (Id. ¶¶ 14-16). Merlini tripped over the cord and fell, striking a credenza. (Id. ¶ 16). As a result of the accident, she was disabled from work. (Id. ¶ 17).

The Massachusetts workers' compensation statute requires all employers, with exceptions that as we will show are not relevant here, to purchase workers' compensation insurance or else to obtain a license as a self-insurer. *See* G.L. c. 152, § 25A. Canada did neither. (Compl. ¶ 20). Indeed, Canada makes a point in its memorandum to say that it made what it characterizes as a sovereign decision not to comply with Massachusetts law.

Merlini received benefits under Canadian law for a short time. (Compl. ¶ 23). Canada's memorandum makes assertions about Merlini's rights under Canadian law, some of which are correct and some of which are not. We do not address this issue here, because it is beside the point: when the workers' compensation statute applies, entitlement to benefits in another

jurisdiction is not a defense to a claim against an employer that failed to obtain workers' compensation insurance in Massachusetts as the statute requires. *See Lavoie's Case,* 334 Mass. 403, 408-411 (1956). Nor can an employee waive her right to compensation under the Massachusetts statute, as Canada seems to suggest when it observes that Merlini was aware that, at least according to the Consulate, she was covered by Canada's workers' compensation scheme. *See* G.L. c. 152, § 46. Canada's emphasis on these points, though, is illustrative of the problem with its position. As we demonstrate, at least with respect to clerical staff who are doing the same job they could do for any private employer, the law treats foreign governments that have employees here in Massachusetts just as it treats any other employer.

After Merlini ceased receiving benefits under Canadian law, she brought a claim against the Workers' Compensation Trust Fund, a fund set up to provide benefits to employees whose employers had failed to obtain workers' compensation insurance as required by the statute. An administrative judge awarded her permanent and total incapacity benefits, but the Reviewing Board reversed the judge's decision, holding that Canada was not "within the personal jurisdiction of the Commonwealth" as required by G.L. c. 152, § 65(2), that Canada was not uninsured in violation of Chapter 152 because it had immunity under the FSIA, and that Merlini was entitled to benefits under Canadian law and thus had no claim against the Trust Fund under G.L. c. 152, § 65(2)(e)(i). (Compl. ¶ 24). The Appeals Court affirmed, but it based its decision solely on Merlini's entitlement under Canadian law and expressly refused to rule on whether the Consulate was required to purchase insurance under the statute.

<u>ARGUMENT</u>

A.    <u>The Reviewing Board's Decision On Canada's Obligation To Comply With The Statute Has No Preclusive Effect.</u>

Canada does not argue for the merits of the Reviewing Board's decision that Canada has the right to ignore the workers' compensation statute in favor of its own compensation scheme. Instead, it simply claims that the Reviewing Board's decision on that point has issue-preclusive effect. The Court should apply Massachusetts's law of issue preclusion to Canada's argument. *See Kosereis v. Rhode Island,* 331 F.3d 207, 212 (1st Cir. 2003).

The Reviewing Board's ultimate decision to reverse the administrative judge and to deny Merlini Trust Fund benefits rested on its decisions on three issues, any one of which would have been sufficient to support the result on its own. The Reviewing Board held, first, that the Canadian government was not "subject to the personal jurisdiction of the Commonwealth," as required by the Trust Fund statute, G.L. c. 152, § 65(2). The judge "lacks authority to make such a determination," the Reviewing Board held, "because the FSIA vests that authority in the federal courts." *Merlini v. Consulate Gen. of Canada,* 29 Mass. Workers' Comp. Rep. 41, 43-45 (2015). Second, the Reviewing Board held that Canada was not "uninsured in violation of" the workers' compensation statute, as § 65(2) also requires. The Board rejected the Trust Fund's argument that Canada was a "public employer" as defined by the statute ("public employers" may be exempt from compliance), but it held that Canada was nevertheless not required to comply with the statute because it had immunity under the FSIA. *Id.* at 45-48. Third, the Reviewing Board held that Merlini was entitled to benefits under Canadian law, which was fatal to her claim under § 65(2). *Id.* at 48-50.

Merlini appealed all three decisions to the Appeals Court. The court affirmed the Reviewing Board's decision solely on the basis that Merlini was entitled to benefits under

Canadian law. The court expressly declined to "address whether the Canadian government is subject to the jurisdiction of the Commonwealth or whether the Consulate was an 'uninsured employer' in violation of G.L. c. 152." *Merlini's Case,* 2016 Mass. App. Unpub. LEXIS 656, at *5 (Jun. 29, 2016).

Canada's memorandum accepts that the grounds for the Reviewing Board's decision that are at issue here were independent of one another (Mem. at 17-18). But Canada goes on to conclude that the independence of the issues shows that each was necessary to the decision. (Id.). This is precisely backwards. *Rutanen v. Baylis (In re Baylis),* 217 F.3d 66 (1st Cir. 2000), is right on point and shows why Canada's view is wrong.

In *Baylis,* beneficiaries of a trust sued the trustees in the Probate and Family Court, claiming that they had negligently breached their fiduciary duties and that they had acted in bad faith. The judge entered a judgment for the beneficiaries, finding that they had proved both their claims. The Appeals Court affirmed on both grounds. On further appellate review, the SJC affirmed, holding that the trustees had breached their fiduciary duty and expressly refusing to rule on the bad faith claim, "stating that a finding of negligent breach of fiduciary duty would be sufficient to affirm the judgment." One of the trustees, Baylis, then filed a bankruptcy petition, and the beneficiaries asserted that the debt was non-dischargeable. The beneficiaries claimed that the probate judge's findings on bad faith should have preclusive effect, but the First Circuit, applying Massachusetts law, rejected the argument:

> "If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone," and neither receives preclusive effect. 1 Restatement (Second) of Judgments § 27 cmt. i [hereinafter Restatement]; *see also York Ford, Inc. v. Building Inspector & Zoning Adm'r,* 38 Mass. App. Ct. 938, 647 N.E.2d 85, 87-88 (Mass. App. Ct. 1995) (adopting the rule of comment i to section 27). If, however, "the appellate court" affirms both grounds of the holding, each ground receives preclusive effect. 1 Restatement § 27 cmt. o; *see also York Ford,*

*Inc.,* 647 N.E.2d at 88 n.7 (adopting the rule of comment o to section 27). On the other hand, if "the appellate court" affirms on one ground and passes on the other, "the judgment is conclusive [only] as to the first determination." 1 Restatement § 27 cmt. o.

*Baylis,* 217 F.3d at 71.

As in this case, *Baylis* involved a claim that a Massachusetts decision should have preclusive effect in federal court, applying Massachusetts preclusion law. As in this case, the Massachusetts decision rested on separate and independent grounds, each of which was sufficient to support the judgment. And as in this case, the Massachusetts decision was appealed, and the appellate court affirmed on one of the two grounds, expressly refusing to rule on the other. The only real differences are, first, that the Massachusetts decision in *Baylis* was judicial rather than administrative, and, second, that in *Baylis* there were *two* appellate decisions rather than one. The first difference is unimportant in this context—certainly an administrative decision cannot have *greater* preclusive effect than a judicial decision would have. As the First Circuit held, the second difference is unimportant, too, because when the SJC takes a case on further appellate review, the Appeals Court decision never becomes binding. *See Baylis,* 217 F.3d at 71 n.3.

Canada suggests that *Alicea v. Commonwealth,* 466 Mass. 228 (2013), saves its argument. Not so, for two reasons.

*First,* in *Alicea* the question was whether the First Circuit's rejection of a claim Alicea had made in the federal courts—that his sentence in a state criminal proceeding had been impermissibly high—should have preclusive effect as a matter of federal law notwithstanding Alicea's argument that the First Circuit had decided the case on two independent grounds, each sufficient on its own to support the judgment. The SJC held that the federal decision did have preclusive effect *because the two bases for the First Circuit's decision were not independent of each other.* Instead, the two findings in the federal court were "inextricably intertwined." *Alicea,*

466 Mass. at 238. In contrast, the Trust Fund's argument to the Reviewing Board that Merlini was not entitled to benefits from the Trust Fund because she was entitled to benefits under Canadian law is entirely unrelated to the Trust Fund's argument that Merlini was not entitled to benefits because Canada was not required to comply with the Massachusetts workers' compensation statute. It might be that Merlini was entitled to benefits under *both* Canadian law and Massachusetts law, and in light of the rule of *Lavoie's Case, supra,* Merlini's entitlement to benefits under Massachusetts law does not turn on whether she was entitled to benefits under Canadian law. So the rationale of *Alicea* does not apply here.

*Second,* in the dictum Canada cites, the *Alicea* court suggested that "the majority of Federal courts" would give preclusive effect to two independent findings, even if the judgment following on those findings had been affirmed based on only one of them. It is not clear that the *Alicea* dictum accurately reflects the state of federal preemption law. *See* 18 Charles A. Wright *et al., Federal Practice & Procedure* § 4421 n.34 (3d ed. 2016) ("The federal decisions agree with the Restatement view that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision"). But both parties here agree that *Massachusetts* preclusion law, not *federal* preclusion law, governs. *Baylis* was a federal decision applying Massachusetts preclusion law. *Alicea* was a Massachusetts case applying federal preclusion law. *See Alicea,* 466 Mass. at 234-35.

In sum, because the Reviewing Board's ultimate decision rested on its decisions about three issues, each of which was sufficient on its own to support the ultimate decision, and because the Appeals Court considered only one of the issues on appeal, the Reviewing Board's decision on the other two issues is not preclusive under Massachusetts law.

B.    Canada Has No Immunity Under The FSIA.

Under the FSIA, a foreign state is presumptively immune from the jurisdiction of courts in the United States. 28 U.S.C. § 1604. There are exceptions, however, and two are relevant here. First, a foreign state is not immune from the jurisdiction of American courts in a case "in which the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). Second, a foreign state is not immune from the jurisdiction of American courts in a case outside the commercial activity exception seeking money damages for personal injury "occurring in the United States and caused by the tortious act or omission of … any official or employee of that foreign state while acting within the scope of his office or employment," unless the claim is based upon the exercise or failure to exercise of a "discretionary function." 28 U.S.C. § 1605(a)(5).

1.    The Commercial Activity Exception Applies.

a.    The Case Is Based Upon The Consulate's Employment Of Merlini.

To determine what a case is "based upon," the Court must identify the "particular conduct" on which the claim is based by looking to the "basis" or "foundation" for the claim, "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case," the "gravamen of the complaint." *Saudi Arabia v. Nelson,* 507 U.S. 349, 356-357 (1993). The relevant question is not whether any one element of the claim shows a commercial activity in the United States, but rather on the Court's determination about the "particular conduct that constitutes the gravamen of the suit," or the "core" of the suit. *OBB Personenverkehr AG v. Sachs,* 136 S. Ct. 390, 396 (2015).

The cases Canada cites, *Nelson* and *Sachs,* have the kind of facts that lead a court to say that a case is not based upon commercial activity in the United States. In *Nelson,* Saudi Arabia employed Nelson, and the employment relationship was plainly commercial. Nelson claimed

9

Saudi Arabia had recruited him in the United States, and that he had then gone to Saudi Arabia to work in a hospital. But after Nelson blew the whistle on safety violations, he was arrested by Saudi government agents, imprisoned, and tortured. The Court held that the gravamen of the claim was the personal injury caused by the wrongful arrest, imprisonment, and torture, not the employment. Likewise, in *Sachs,* Sachs purchased a Eurail pass in the United States and used it to board a state-owned train in Austria. She fell and suffered a personal injury. She argued that the travel agent from whom she bought the ticket in the United States was an agent of the Austrian government and thus that the claim was based on Austria's commercial activity in the United States, but plainly the gravamen of the claim was the personal injury in Austria caused by her fall, as the Court held.

*Nelson* and *Sachs* shed little light because they are so different from Merlini's case on the facts. *Holden v. Canadian Consulate,* 92 F.3d 918 (9th Cir. 1996), is much closer on the facts and shows why Canada's argument fails. An American employee of the Canadian consulate in San Francisco was laid off when the consulate closed. A smaller satellite office opened to replace it, and the employee lost a competition for a spot at the new office to a younger male worker. She brought a claim for sex discrimination and age discrimination, among other things. Canada asserted FSIA immunity, just as it does here, and it argued that the claim was based on its sovereign decision to close the consulate. The court rejected the argument: the claim was not about the closure of the consulate but about the sex and age discrimination. *Holden,* 92 F.3d at 920-21.

*Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic,* 877 F.2d 574 (7th Cir. 1989), is similar. There, the Greek government had a legal obligation under its own law to provide organ transplant services to its citizens, but the surgery was not widely available in

Greece. So Greece sent its citizens to the United States, and it contracted with physicians and an organ bank to perform the transplants. When Greece failed to pay, the doctors sued. Greece argued that the case was not based upon the contract, but rather on "the provision of … health benefits by the Hellenic Republic to citizens in Greece," which was "not a commercial activity, but a governmental one." The court rejected this argument on the grounds that what matters is not the *reason* or the purpose for Greece's conduct, but rather the nature of the conduct. *Rush-Presbyterian,* 877 F.2d at 580-81.

The same reasoning applies here. Merlini's claim has nothing to do with Canadian governmental decisions made in Ottawa. Merlini does not have to prove that Canada *decided* not to participate in Massachusetts's workers' compensation system. The reasons why Canada was uninsured are entirely irrelevant. Merlini's claim would be precisely the same if Canada had decided to obtain Massachusetts workers' compensation insurance but coverage had lapsed because a clerk forgot to mail in a premium check, or if Canada had intended to operate as a self-insurer under the statute but failed to realize that a license from the Commonwealth was necessary. The gravamen of the complaint is Merlini's workplace accident in the United States in the course of her employment here, not Canada's decision to flout Massachusetts law.

      b.    <u>Canada's Argument Rests On The Faulty Premise That It Had The Right To Decide Whether Or Not To Comply With Massachusetts Law.</u>

Another way to see that the gravamen of Merlini's claim is not a governmental decision made by Canada but rather Canada's employment of Merlini and her injury in the scope of that employment is to see that Canada had no decision to make. Nothing in Massachusetts law, in federal law, or in international law exempts foreign governments from compliance with Massachusetts's workers compensation statute.

i. <u>The Workers' Compensation Statute Does Not Exempt Foreign Governmental Employers.</u>

The workers' compensation statute requires every "employer" to provide for the payment of the benefits required by law, either by insurance or by obtaining a license as a self-insurer. G.L. c. 152, § 25A. "Employer" is defined to mean any person or entity "employing employees subject to this chapter," with exceptions not relevant here. G.L. c. 152, § 1(5). "Employee" is defined to mean any person "in the service of another under any contract of hire, express or implied, oral or written," with exceptions not relevant here. G.L. c. 152, § 1(4). There is an exception where the employer is "engaged in interstate or foreign commerce," but "only so far as the laws of the United States"—not the laws of any foreign country—provide for workers' compensation. *Id.* The statute is to be construed "broadly to include as many employees as its terms will permit." *Warren's Case,* 326 Mass. 718, 719 (1951).

Canada's memorandum refers to the Consulate as a public employer and asserts that as a public employer Canada is not required to comply with the statute. The memorandum miscites *Coppola v. City of Beverly,* 31 Mass. App. Ct. 209 (1991), a case involving a Massachusetts public school teacher employed by a city, for the proposition that compliance with the statute is optional for "public employers."

The reason the citation to *Coppola* misleads is that "public employer" has a specific meaning in Massachusetts workers' compensation law. It refers to the Commonwealth, to certain Massachusetts governmental authorities such as the MBTA, and to electing Massachusetts counties, cities, towns, and districts. *See* G.L. c. 152, §§ 25B, 69. In the same decision Canada says is preclusive, the Reviewing Board rejected the argument Canada makes here and correctly held that "as a foreign government, Canada simply is not one of the public employers described

in §§ 25A, 25B, 65 and 69-75, and is not subject to those statutory provisions." *Merlini,* 29

Mass. Workers' Comp. Rep. at 47.

> ii. <u>Neither the FSIA Nor Massachusetts Law Shields Canada From</u>
> <u>the Obligation To Comply With The Statute.</u>

The Reviewing Board went on to hold that despite the statute, Canada should be treated

as a public employer: "the broader concept which provided the foundation for the enactment of

those statutory provisions, and which dictates the result here, is the doctrine of sovereign

immunity." *Id.* The Board then engaged in analysis that, with due respect to the Board, is

patently and indisputably incorrect—an analysis that Canada does not even attempt to defend in

its papers.

According to the Board, the Consulate is "entitled to claim immunity under the FSIA."

The FSIA "is the exclusive source of subject matter jurisdiction over suits involving foreign

states or their instrumentalities. Once immunity has been asserted by a foreign sovereign

government, our department lacks jurisdiction to determine whether an exception to that

immunity applies. … Thus, by virtue of Canada's claim of sovereign immunity, asserted in the

proceedings below, our department lacks subject matter jurisdiction over the employee's claim

against Canada." *Id.* at 47-48 (citation omitted). The reason why the DIA lacked the ability even

to determine whether the assertion of immunity under the FSIA had merit was that "the FSIA

vests that authority in the federal courts." *Id.* at 44.

There are many problems with this analysis. Here we point out just three. First, it is

simply wrong to say that the FSIA gives *exclusive* jurisdiction to federal courts. The statute, 28

U.S.C. § 1604, "expressly provides that its standards control in the courts of the United States

and of the States ... and thus clearly contemplates that such suits may be brought in either federal

or state courts." *Verlinden B.V. v. Cent. Bank of Nigeria,* 461 U.S. 480, 489 (1983). So the

Reviewing Board was simply wrong to find that it lacked authority to determine whether Canada had FSIA immunity because it was not a federal court. Second, the Board relied on Indian law cases instead of FSIA cases. *Merlini,* 29 Mass. Workers' Comp. Rep. at 47 n.10. This led to its incorrect conclusion, because there is no commercial activity exception to a tribe's sovereign immunity, as there is to a foreign state's FSIA immunity. *See Kiowa Tribe of Okla. v. Mfg. Techs., Inc.,* 523 U.S. 751 (1998). Third, the FSIA provides a rule of immunity *from suit,* i.e., from the courts' jurisdiction to adjudicate, not a rule that says the law is inapplicable to the foreign sovereign, i.e., a rule of immunity from the jurisdiction of the United States (or Massachusetts) to prescribe laws that apply to foreign governments when they do business here:

> In general, unless otherwise provided by special agreement, activities of a foreign state, whether they are "governmental" or "commercial" in character, are subject to local law, though as to the former the foreign state is immune from enforcement of that law by domestic courts, administrative bodies, or police action.

*Restatement (Third) of the Foreign Relations Law of the United States,* Part IV, Ch. 5, Subch. B, Intro. Note (1987). FSIA immunity (if it existed here) would shield Canada from a lawsuit in the United States, but it would not mean that Canada had not violated the underlying legal duty to provide workers' compensation under Massachusetts law. Immunity from suit under the FSIA is waivable, *see* 28 U.S.C. § 1605(a)(1). So in a hypothetical case where there were *two* consular employees with claims like Merlini's, if Canada waived its immunity from suit in one case but not the other, one cause could proceed but the other could not, even though Canada's underlying legal obligation with respect to both employees would be the same. This shows that the Reviewing Board was simply wrong to think that Canada's obligation to do what the workers' compensation statute requires had anything to do with the FSIA.

As the State Department has long said, "as employers in the United States, [foreign] missions are subject to relevant federal and state employment laws and regulations unless they

are exempted from these rules by U.S. or international law," and there is "no U.S. law, treaty provision, or rule of customary international law … that exempts a sending state from participating in a workers compensation plan if local law so requires." Letter from Office of Diplomatic Law and Litigation of the Office of the Legal Adviser (Sept. 11, 1990), *1989-90 Digest of United States Practice in International Law 1989-1990,* ch. 10, § E(4)(c), at 391-93. We have just shown that the FSIA does not exempt foreign governmental employers from compliance, and we showed earlier that the workers' compensation statute itself does not exempt them either. The legislature knows how to exempt foreign governments from the obligation to purchase mandated insurance for their employees when it wants, *see* G.L. c. 151A, § 6(m) ("employment" for Massachusetts unemployment insurance purposes does not include "service performed in the employ of a foreign government, including service as a consular or other officer or employee"). But it has not done so here. As there is no exemption from the law's requirement, Canada must comply with the statute.

  c.  Canada's Employment Of Merlini Was A Commercial Activity.

  Canada has focused on arguing that the case is based upon its supposed sovereign decision. We say instead that the case is based upon Canada's employment of Merlini. If we are right, then the remaining FSIA question—one Canada has not addressed—is whether the employment of Merlini was commercial. The intent of the statute is clear on that point: the "employment or engagement of laborers, clerical staff or public relations or marketing agents" is within the commercial activity exception. *See* H.R. Rep. No. 94-1487, at 16 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604, 6615. This point is underlined by the FSIA's definition of "commercial activity":

  A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be

> determined by reference to the nature of the course of conduct or particular transaction or
> act, rather than by reference to its purpose.

28 U.S.C. § 1603(d). And several cases of employment discrimination or wrongful termination have held that a consulate's or embassy's employment of non-governmental American clerical or other workers is a commercial activity. *See Holden, supra* (employee was "commercial officer" whose duties included "responding to inquiries from Canadian companies regarding information on prospective buyers, assistance in obtaining sales representation or wholesale distributors, provision of names or appointments with trade contacts and evaluations of the sales potential of a particular product"); *Segni v. Commercial Office of Spain,* 835 F.2d 160 (7th Cir.1987) (in breach of employment contract case, employee's duties were "developing the marketing of Spanish wines in the midwest area of the United States;" court denied motion to dismiss and rejected Spain's claim that he "had been hired to execute the policy of the Spanish government, i.e. the fostering of exports of Spanish wines to the American Midwest"); *El-Hadad v. United Arab Emirates,* 496 F.3d 658 (D.C. Cir. 2007) (in wrongful termination and defamation case, employee was an accountant with supervisory authority over several other accountants at the embassy; court denied motion to dismiss). Merlini's case is stronger than *Segni, Holden,* or *El-Hadad;* she was an administrative assistant whose work could not possibly be categorized as public or governmental and who had no supervisory authority over anybody. And her case contrasts strongly with the cases on commercial activity that Canada cites, where the employees were a citizen and civil servant of the foreign state with lifetime tenure working at a mission on a temporary rotation, *see Kato v. Ishihara,* 360 F.3d 106 (2d Cir. 2004), or a security agent charged with the personal protection of high-level dignitaries of the foreign state, *see Butters v. Vance Int'l, Inc.,* 225 F.3d 462 (4th Cir. 2000).

The commercial activity cases can inform the Court's analysis of the "based upon" question Canada raises, because, like *Holden* and *Rush-Presbyterian, supra,* the commercial activity cases reject the notion that a foreign government can escape the commercial activity exception by characterizing its commercial activities as the product of a sovereign decision or of some purpose that is peculiar to foreign sovereigns. *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607 (1992), for example, held that when Argentina issued dollar-denominated bonds and later defaulted, a claim by the bondholders was based on Argentina's commercial activity notwithstanding Argentina's claim that it was necessary to look at the context of the events to see whether they were commercial. Argentina claimed the purpose of issuing the bonds was not commercial, but to help the government "fulfil its obligations under a foreign exchange program designed to address a domestic credit crisis, and as a component of a program designed to control [its] critical shortage of foreign exchange." But the Court rejected the argument, noting that "however difficult it may be … to separate 'purpose' (*i.e.,* the *reason* why the foreign state engages in the activity) from 'nature' (*i.e.,* the outward form of the conduct that the foreign state performs …), the statute unmistakably commands that to be done." *Id.* at 617 (citation omitted). As we have already shown, the act that Canada performed—failing to buy workers' compensation insurance—is something any private employer can do. Canada is focused on the reasons for its act, which are beside the point.

Along similar lines, in *Universal Trading, supra,* the Ukrainian government contracted with a Massachusetts firm to recover Ukrainian state assets from third parties. The firm alleged Ukraine failed to pay. In support of its FSIA immunity argument, Ukraine argued that the *purpose* of the work it hired the firm to do was "prosecuting criminal conduct and repatriating stolen assets into [its] sovereign treasury," but the First Circuit, citing *Weltover,* held that it was a

17

mistake to look to the purpose of Ukraine's contract. The contract itself called for the Massachusetts firm to do what any asset recovery firm working for a private client would do, and therefore, it was commercial notwithstanding that Ukraine had purposes that were peculiar to sovereigns. *Universal Trading,* 727 F.3d at 19-25.

This reasoning applies here. Canada says that its *purpose* or intention to provide the kind of workers' compensation for its workers around the world that it thought best, something that, *arguendo,* is peculiar to sovereigns. But its *actions* were the same as the actions of any private employer sued under § 66—it hired workers and then failed to purchase insurance.

2.  The Noncommercial Tort Exception Applies

In the alternative, the noncommercial tort exception to FSIA immunity, 28 U.S.C. § 1605(a)(5), applies. The exception covers cases not within the commercial activity exception

> in which money damages are sought against a foreign state for personal injury … occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment.

28 U.S.C. § 1605(a)(5). But the exception does not apply if the claim is based upon "the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." *Id.*

The issue, again, is whether the action is "based upon" Canada's decision not to comply with Massachusetts law. We have already shown that it is not. Merlini alleges that the employee of the Consulate who failed to secure the cord properly was negligent and that his negligence caused her injury. (Compl. ¶ 15). Again, the *reasons* why Canada was uninsured at the relevant time are not important to Merlini's action. It may be that Canada made a conscious decision not to obtain insurance. It could be that a clerk forgot to mail in the premium check. It could be that Canada's overall policy was to obtain workers' compensation insurance in jurisdictions where it

18

does business but that someone misunderstood the policy and did not obtain the insurance. No matter what the reason, Merlini's claim would be the same. The gravamen of the complaint is that Merlini worked for the Consulate and that she tripped and fell over an unsecured cord. No one could argue that the question whether to secure the cord was discretionary.

C.    There Is No Risk To Foreign Relations.

Canada argues that a ruling in Merlini's favor could have "serious ramifications for the U.S. government." (Mem. at 13). There are no serious comity or reciprocity concerns here. As we have already shown, the case is based on commercial conduct, not governmental conduct. And as we have shown, the US government itself takes the view that foreign states are required to comply with state workers' compensation laws unless the state law itself exempts them—an argument Canada has not made. Nor is there a serious argument to be made about burden. According to the online records of the Department of Industrial Accidents, many foreign consulates in Massachusetts are able to comply with the workers' compensation law—the British, Brazilian, Dominican, Dutch, Israeli, Italian, and Swiss consulates have Massachusetts workers' compensation insurance, as apparently does the Québec Government Office in Boston (which, as part of a political subdivision of Canada, is within the protection of the FSIA, *see* 28 U.S.C. § 1603(a)). *See* Workers' Compensation Proof of Coverage, *available at* http://64.73.26.43, last accessed on Jun. 23, 2017. And in any case, to the extent Canada thinks it better or easier to self-insure, the statute allows for that, as long as Canada obtains a license, which it has not done. In short, the Court should faithfully apply the FSIA, as it should in any case, but there is no reason to apply it more narrowly or strictly than Congress intended or the precedents require.

## CONCLUSION

For these reasons, the motion to dismiss must be denied.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Merlini requests oral argument on this motion.

Respectfully submitted,

CYNTHIA L. MERLINI

By her attorney:

/s/ Theodore J. Folkman
Theodore J. Folkman (BBO No. 647642)
MURPHY & KING, P.C.
One Beacon St.
Boston, Mass. 02108
(617) 423-0400
tfolkman@murphyking.com

Dated: June 30, 2017

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the CM/ECF system, will be sent

electronically to the registered participants as identified on the NEF, and that paper copies will

be sent to those indicated as non-registered participants on June 30, 2017.

/s/ Theodore J. Folkman
Theodore J. Folkman

729340